# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTICT OF NORTH CAROLINA

RONALD MCCLARY,    )
    )
       Plaintiff,    )
    )
    v.    )        1:19CV1
    )
FNU HAFEZE, et al.,    )
    )
       Defendants.    )

## MEMORANDUM OPNION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon a motion for summary judgment by Defendants FNU Hafeze and FNU Vanardo (collectively "Defendants").[1]  (Docket Entry 66.)  Plaintiff Ronald McClary has not filed a response.  For the reasons stated herein, the Court will recommend that Defendants' motion for summary judgment be granted.

## I.  BACKGROUND

Plaintiff, a *pro se* prisoner, filed this action pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments of the United States Constitution by five correctional officers at Scotland Correctional Institution ("Scotland") in Laurinburg, North Carolina.  (*See generally* Compl., Docket Entry 2.)  Specifically, Plaintiff alleges that on November 21, 2018, Defendant Hafeez, an officer at Scotland, slammed Plaintiff's arm into

---

[1] Plaintiff misspelled the last names of both Defendants in his complaint.  Pursuant to the affidavits they have filed in support of their motion for summary judgement, their last names, correctly spelled, are Hafeez and Varnado.  (*See* Docket Entries 68-4, 68-6.)  The undersigned will refer to them as such for the remainder of this Recommendation.

1

the trap door of his cell, causing scrapes and bruises. (*Id.* at 6-7.)[2] Plaintiff states that he was not threatening Defendant Hafeez in any way but was discussing a problem that he had with his food. (*Id.* at 6.) Plaintiff contends that Defendant Hafeez's action was "willful," and that Defendant Martinez did nothing to stop the injury from occurring. (*Id.*) Plaintiff claims that Defendant Varnado, a sergeant at Scotland, did not allow Plaintiff to receive medical treatment for his injuries following the incident. (*Id.*) Finally, Plaintiff alleges that two other prison officials (Defendants Maples and Barber)[3] tore up administrative grievances he filed concerning the incident, rather than process them as they should have. (*Id.*)[4]

Within a month of filing his original complaint, Plaintiff filed two supplements thereto. (*See* Docket Entries 3, 4.) In the first of these supplements, Plaintiff alleges "ongoing" problems with his grievances being ripped up by jail staff. (Docket Entry 3 at 1.) Specifically, he alleges that four grievances were destroyed, and he was unable to file another grievance. (*Id.*) Plaintiff attached a copy of a letter dated November 17, 2018 (several days before the alleged incident) to Mr. Lassiter, Director of Prisons, mentioning his problem with jail staff ripping up his grievances. (Docket Entry 3 at 2.) In the second supplement, Plaintiff again

---

[2] All citations in this recommendation refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

[3] Defendants Barber, Maples, and Martinez have all been dismissed from this action. (*See* Docket Entries 5, 21.)

[4] Along with his original complaint, Plaintiff submitted four letters that relate to the filing of grievances. (Compl. at 14-18.) The first two letters addressed to him are from November 7 and 13, 2018, and thus predate the alleged incident. (*Id.* at 14-15.) The third letter written by grievance officer Sheryl Hatcher is dated December 6, 2018. (*Id.* at 16.) It refers to a grievance that Plaintiff filed in October 2018 that was allegedly ripped up and a grievance received by Ms. Hatcher on November 27, 2018 that "is in Step 1 with medical." (*Id.* at 16.) The fourth letter is dated December 25, 2018, written by Plaintiff, and addressed to Kimberly Grande, the Executive Director of the Inmate Grievance Resolution Board. (*Id.* 17-18.) In this letter, Plaintiff reports ongoing problems with his grievances being torn up by prison staff but does not make mention filing a grievance related to the alleged incident concerning Defendant Hafeez. (*See generally* Compl.)

2

alleges that his grievances were ripped up, but states that he is doing his due diligence to comply with the PLRA. (Docket Entry 4 at 1, 3.) He includes a copy of a letter sent to Superintendent Katy Poole on January 14, 2019 explaining that the four grievances he tried to file were ripped up. (*Id.* at 2.) Plaintiff does not specify when he attempted to file these grievances or name the individuals who allegedly destroyed them. (*See* Docket Entries 3, 4.)

Defendants filed their motion for summary judgment and supporting materials on October 12, 2020. (Docket Entries 66, 67, 68.) The Clerk of Court sent Plaintiff a *Roseboro* letter on October 13, 2020 informing him of his right to respond to Defendants' motion. (Docket Entry 69.) On November 2, 2020 Plaintiff filed a "Motion for Reconsideration" requesting that the Court reconsider its ruling on a prior discovery motion. (Docket Entry 70.) In his "Motion for Reconsideration," Plaintiff acknowledged receipt of Defendants' motion for summary judgment and the November 12, 2020 deadline for his response. (*Id.* at 1.) Since it appeared the Plaintiff was waiting for a resolution of his "Motion for Reconsideration" before responding to Defendants' motion for summary judgment, the Court extended Plaintiff's response deadline by thirty days, up to and including January 11, 2021. (Docket Entry 71.) To date, Plaintiff has not responded.[5]

---

[5] Absent a response from Plaintiff, this Recommendation only weighs the allegations and evidence Plaintiff included in his original complaint and the first two supplements he filed against the evidence filed by Defendants in support of their motion for summary judgment. (*See* Docket Entries 2, 3, 4, 66, 67, 68.) In addition to the original complaint and the two supplements filed shortly thereafter, Plaintiff filed several other letters with the Court that were also docketed as supplements to his complaint. (*See* Docket Entries 13, 15, 16, 18, 20). However, in its April 16, 2019 Order, the Court addressed these filings, reminding Plaintiff that he must communicate with the Court via motions, briefs, or pleadings as permitted by the Federal Rules of Civil Procedure and the Local Rules and stating that "[n]o action will be taken on paper writings which are in the form of letters addressed to a particular judge." (Docket Entry 21 at 1.) Consistent with that Order, the undersigned will not treat Docket Entries 13, 15, 16, 18, and 20 as valid supplements to the complaint.

Case 1:19-cv-00001-CCE-JLW   Document 77   Filed 03/16/21   Page 3 of 19

## II. DISCUSSION

Because Plaintiff "fail[ed] to file a response [to Defendants' motion for summary judgment] within the time required by [this Court's Local Rules], the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. LR 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession).[6] Alternatively, as explained below, the Court should grant Defendants' motion for summary judgment on the merits.

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary

---

Plaintiff also filed an amended complaint on August 30, 2019 and a supplement thereto on January 21, 2020. (Docket Entries 33, 42.) In these documents, Plaintiff names additional defendants that he alleges are liable as supervisors but does not provide further information concerning the November 21, 2018 incident. (*See generally* Docket Entry 33.) Part of Plaintiff's amended complaint appears to be an objection to one of the Court's prior orders. (*See id.* at 12-14.) In any case, Plaintiff did not seek leave to amend his complaint, nor was he permitted to do so as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). Therefore, the undersigned will not discuss the allegations found therein. *See, e.g., McSwain v. Jobs*, No. 1:13-CV-890, 2014 WL 12493337, at *1 (M.D.N.C. Apr. 2, 2014), *aff'd*, 583 F. App'x 292 (4th Cir. 2014) ("The Court will also dismiss [plaintiff's] purported amended complaint . . . because he filed it without court permission."). However, in an abundance of caution, the undersigned has reviewed these fillings and concludes that nothing in them alters the analysis herein, even if Plaintiff had properly sought and been granted permission to file them.

[6] Plaintiff's status as a *pro se* litigant does not excuse his inaction. "As the United States Supreme Court observed in *McNeil v. United States*, 508 U.S. 106, 113 (1993), '[the Supreme Court] ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.' Accordingly, pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." *Dewitt v. Hutchins*, 309 F. Supp. 2d 743, 748-49 (M.D.N.C. 2004) (internal parallel citations and second set of internal quotation marks omitted).

4

judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and a court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson,* 477 U.S. at 248-49.

Defendants move for summary judgment as to all of Plaintiff's claims against them. (Docket Entry 66.) Defendants argue that summary judgment is warranted for two reasons: 1) Plaintiff failed to exhaust his administrative remedies; and 2) Plaintiff has not presented sufficient evidence in support of his claims against Defendants. (*See generally* Docket Entry 67.) In support of their motion, Defendants Hafeez and Varnado have filed an appendix of

5

nine exhibits, which include affidavits from Defendant Hafeez, Defendant Varnado, Kimberly Grande (Executive Director of the North Carolina Department of Public Safety's ("NCDPS") Inmate Grievance Resolution Board ("IGRB")), and Letitia Owen (a registered nurse located at Scotland at the time Plaintiff's alleged injuries occurred). (*See* Docket Entries 68-1, 68-4, 68-6, 68-8.)

Ms. Grande's affidavit reviews "the three-tier review process for offender grievances" required by the NCDPS Administrative Remedy Procedure ("ARP"). (Grande Decl. ¶¶ 4-9, Docket Entry 68-1.) Ms. Grande states that she reviewed the IGRB records submitted by Plaintiff between November 18, 2018 and January 31, 2019 and found only "one grievance that was subsequently exhausted through Step 3." (*Id.* ¶¶ 10-11.) A copy of the grievance, dated November 23, 2018, is included with Ms. Grande's affidavit, along with a copy of the NCDPS ARP. (Docket Entries 68-2, 68-3.) The purpose of the grievance, as written by Plaintiff, was "to get medical attention for the above maladies and ailments," which are limited to medical problems related to his bladder, prostate, back, blood and digestive system. (Docket Entry 68-3 at 2.)

In her affidavit, Defendant Varnado states that she remembers nothing of the incident Plaintiff alleges in this lawsuit. (Varnado Decl. ¶ 5, Docket Entry 68-4.) She further states that "[t]here is no incident report addressing the alleged incident, and no medical records referencing an injury to Offender McClary relating to this alleged incident." (*Id.*) Defendant Varnado explains that she only became aware of Plaintiff's allegations when he filed this lawsuit, at which time she made a written statement indicating that she had no knowledge of the incident. (*Id.* ¶¶ 6-7; *see also* Docket Entry 68-5.)

6

In his affidavit, Defendant Hafeez states that he remembers securing the trap door on Plaintiff's cell after giving Plaintiff his meal on November 21, 2018. (Hafeez Decl. ¶ 5, Docket Entry 68-6 .) He recalls that Plaintiff was angry about receiving the wrong snack bag on that date. (*Id.*) He also recalls that Plaintiff "put an arm through the trap door momentarily but he withdrew it without the use of force." (*Id.* ¶ 6.) Defendant Hafeez denies slamming Plaintiff's arm in the trap door and states that no incident report was completed that day "because there was no use of force." (*Id.* ¶¶ 7-8.) Like Defendant Varnado, Defendant Hafeez states that he only became aware of Plaintiff's allegations against him when this lawsuit was filed, at which time he also completed a statement. (*Id.* ¶¶ 9-10.) Defendant Hafeez's affidavit is consistent with the signed statement he made on January 16, 2019 in which he recalled a dispute over Plaintiff's snack bag but denied slamming Plaintiff's arm in the trap door. (*See* Docket Entry 68-7.)

Finally, Ms. Owen states in her affidavit that following the initiation of this lawsuit, she was asked to review Plaintiff's medical records to determine if there was any record of an injury on November 21, 2018. (Owen Decl. ¶ 5, Docket Entry 68-8.) She states that the medical records only indicate that Plaintiff was attended sick call on December 2, 2018, at which time he "voiced no concerns or complaints of injuries resulting from the alleged use of force incident on November 21, 2018." (*Id.* ¶ 6.) The attached sick call record from December 2, 2018 indicates that Plaintiff's chief complaint was back pain. (*See generally* Docket Entry 68-9.) The sick call record makes no mention of bruises or scrapes on his arm or any pain related to such injuries. (*Id.*)

Case 1:19-cv-00001-CCE-JLW   Document 77   Filed 03/16/21   Page 7 of 19

## A. Exhaustion of Administrative Remedies

First, Defendants argue that Plaintiff did not properly grieve his claims against them. (Docket Entry 67 at 7-9.) The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires inmates to properly exhaust administrative remedies before filing civil actions challenging the conditions of their confinement. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore*, 517 F.3d at 725. The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It is well-settled by now that Section 1997e's exhaustion requirement is mandatory. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford*, 548 U.S. at 90-91 (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 676–77 (4th Cir. 2005) (citing *Porter*, 534 U.S. at 524).

The NCDPS has a three-step Administrative Remedy Procedure ("ARP") which governs the filing of grievances in each of its correctional facilities. *See, e.g., Moore*, 517 F.3d at 721. (*See also* Docket Entry 68-2.) The ARP first encourages inmates to attempt informal communication with responsible officials at the facility where the problem arose. ARP § .0301(a). If informal resolution is unsuccessful, the ARP provides that "any aggrieved inmate may submit a written grievance." *Id.* § .0310(a)(1). On initial review, the screening officer determines whether to accept, reject or return the grievance based upon the criteria set forth in the ARP. *Id.* § .0310(a)(4). If the grievance is accepted and relief is denied, the prisoner may request relief from the Facility Head. *Id.* § .0310(b)(1). If the inmate is not satisfied with

the decision reached at the above-described step two of the grievance process, he or she may appeal to the Secretary of Public Safety through the Inmate Grievance Examiner ("IGE"). *Id.* § .0310(c)(1). "The decision by the IGE or a modification by the Secretary of Public Safety . . . constitute[s] the final step of the [ARP]." *Id.* § .0310(c)(6).

Furthermore, it is well-settled that a prisoner "may not exhaust (or attempt to exhaust) his administrative remedies during the pendency of a lawsuit." *Thomas v. Slater*, No. CA 9:10-0028-DCN-BM, 2010 WL 4822407, at *3 (D.S.C. Nov. 3, 2010) (unpublished), *report and recommendation adopted*, 2010 WL 4823071 (D.S.C. Nov. 22, 2010) (unpublished). *See also Germain v. Shearin*, 653 F. App'x 231, 234 (4th Cir. 2016) ("Exhaustion has not occurred and dismissal is warranted when an institution's appeal process necessarily must continue after the filing of the complaint."). Rather, a prisoner must fully exhaust all steps of the administrative process *before* filing his lawsuit. *Ballard v. Haynes*, No. 3:17-CV-455-FDW, 2018 WL 5793154, at *2 (W.D.N.C. Nov. 5, 2018) (unpublished). *See also French v. Warden*, 442 F. App'x 845, 846 (4th Cir. 2011) (stating that "based on the dates of his initial grievance and the filing of the complaint in this action, [the inmate] could not have completed the grievance process before he filed suit in the district court"); *Seelig v. Perry*, No. 1:16CV1166, 2017 WL 5006427, at *9 (M.D.N.C. Oct. 30, 2017) (citing *Seamons v. Guise,* No. 3:16–CV–649–FDW, 2017 WL 190101, at *2 (W.D.N.C. Jan. 17, 2017) (unpublished) ("The law is settled that a plaintiff must exhaust administrative remedies before filing a claim, and a prisoner is not entitled to exhaust administrative remedies during the pendency of an action.")).

In support of their argument that Plaintiff failed to exhaust his administrative remedies, Defendants point out that there is only evidence of Plaintiff having filed one grievance

9

between the date of the alleged incident (November 21, 2018) and the date he initiated this lawsuit (January 2, 2019). (Docket Entry 67 at 9.) That grievance, filed two days after the trap door incident, addressed chronic medical conditions and did not mention the alleged injuries to his arm. (*Id.* (citing Docket Entry 68-3).) Moreover, Defendants argue that even if Plaintiff had filed a grievance immediately following the alleged incident, it is "implausible" that the grievance could have gone through all three steps of the ARP process in the approximately six-week period between the alleged incident and the filing of his lawsuit, especially given that this was during the holiday season. (*Id.* at 8-9.)

Consistent with Defendants' argument, the undersigned finds that the record demonstrates that no grievance was lodged against Defendants relating to the alleged incident at any time between its occurrence on November 21, 2018 and the initiation of this lawsuit on January 2, 2019. Failure to file such a grievance precludes Plaintiff from asserting claims against Defendants in this action. *Moore*, 517 F.3d at 725. Plaintiff's complaint (and the supplements thereto) allege that he attempted in good faith to file grievances related to the alleged incident, but prison officials ripped them up, thereby obstructing his efforts to comply with the PLRA. (Compl. at 6; Docket Entries 3, 4.)[7]

The Court recognizes that a prisoner's failure to exhaust administrative remedies may be excused when prison officials hinder, delay, or otherwise prevent prisoners from availing themselves of administrative procedures. *See Hill v. Haynes,* 380 F. App'x 268, 270 (4th Cir.

---

[7] The letters Plaintiff submitted with his complaint do not corroborate his allegations but relate primarily relate to grievances he filed or attempted to file before the alleged incident occurred. (*See* Compl. at 14-18.)

2010); *see also Patel v. Moran*, 897 F. Supp. 2d 389, 398 (E.D.N.C. 2012) ("[A] prisoner is not responsible when he follows the proper grievance procedures and prison officials nevertheless mishandle the grievance.") Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). However, at the summary judgment stage, the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans*, 80 F.3d at 962; *Anderson,* 477 U.S. at 248-49. Plaintiff has not responded to Defendants' motion for summary judgement with affidavits or other evidence that supports his allegations that he was prevented from filing a grievance related to this incident. Uncorroborated statements by Plaintiff himself constitute the only evidence in the record suggesting that Plaintiff's grievances regarding the alleged incident were destroyed.[8] Further, even assuming Plaintiff had successfully filed a grievance following the alleged incident on November 21, 2018, it appears unlikely that Plaintiff would have been able to complete the three-step grievance process before January 2, 2019, the day he filed this lawsuit. (*See* Docket Entry 68-2) (indicating that the grievance process must

---

[8] The undersigned has already explained why the contents of Plaintiff's purported amended complaint and the supplement thereto (Docket Entries 33, 42) will not be addressed. However, as stated above, the undersigned has reviewed these documents and finds that they do not provide any further corroboration that alters the analysis above. The documents attached to those filings merely repeat Plaintiff's unsupported claim that the grievance he attempted to file related to the alleged incident was torn up. (*See* Docket Entry 42 at 12-13.) Specifically, a copy of another grievance that Plaintiff filed on February 12, 2019 makes this claim and references the alleged assault by Officer Hafeez. (*Id.*) Other attached records indicate that this grievance filed in February went through several steps of the ARP process. (*Id.* at 14, 16.) However, none of these documents contradict Defendants' evidence indicating that no grievance related to the alleged incident was filed *before* the initiation of this lawsuit on January 2, 2019, as required by the PLRA. *See Ballard*, 2018 WL 5793154, at *2.

be completed within 90 days of a grievance being accepted).) *See also French*, 442 Fed. App'x at 846.

Therefore, Plaintiff has failed to create a genuine issue of material fact on the issue of exhaustion. *See McNeill v. Gaddy*, No. 1:18CV786, 2019 WL 4723329, at *4 (M.D.N.C. Sept. 26, 2019) (unpublished), *report and recommendation adopted*, No. 1:18CV786, 2019 WL 5425357 (M.D.N.C. Oct. 23, 2019); *see also Jones v. Metts*, No. 5:11-CV-00122-RBH, 2012 WL 630180, at *3 (D.S.C. Feb. 27, 2012) (unpublished) ("[U]nsubstantiated allegation[s], wholly lacking in evidentiary support, [are] insufficient to create a genuine issue of material fact as to whether [prisoner] did, in fact, exhaust his administrative remedies."); *Fox v. Barnes*, No. 1:16CV1196, 2018 WL 3406859, at *4 (M.D.N.C. July 12, 2018) (unpublished); *Seelig*, 2017 WL 5006427, at *9. Defendants' motion for summary judgment should be granted for this reason. Alternatively, Defendants' motion for summary judgment should also be granted for the reasons that follow.

## B.  Sufficiency of the Evidence

Second, Defendants contend that there is "simply no evidence or forecast of evidence sufficient to support Plaintiff's claims in this matter." (Docket Entry 67 at 10.) Defendants reiterate that there are no incident reports or medical records corroborating Plaintiff's allegations. (*Id.*) Furthermore, Defendants point out that Defendant Varnado had no knowledge of the incident, and Defendant Hafeez remembers Plaintiff being angry about his food on November 21, 2018 but denies any use of force that day. (*Id.*) The undersigned agrees that there is insufficient evidence for Plaintiff's claims against Defendant Hafeez or Defendant Varnado to survive Defendants' motion for summary judgment.

### 1. Defendant Varnado

Plaintiff's claim against Defendant Varnado centers on her alleged denial of medical care to Plaintiff in violation of the Eighth Amendment. (*See* Compl. at 4, 6.) The Eighth Amendment requires prison officials to provide "humane conditions of confinement," including the provision of adequate medical care. *Farmer v. Brennan*, 511 U.S. 825. 832 (1994). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). To state a cognizable claim, "a prisoner must allege acts or omissions [by prison officials] sufficiently harmful to evidence *deliberate indifference to serious medical needs*." *Estelle*, 429 U.S. at 106 (emphasis added). In determining whether the standard is met, courts employ a two-part test. "First, courts evaluate whether there is evidence of a serious medical need. If the answer is yes, courts then consider whether the defendant's response to that need amounted to deliberate indifference." *Eaker v. Miller*, No. 1:07CV575, 2008 WL 4280361, at *7 (M.D.N.C. Sept. 15, 2008) (unpublished).

Here, even viewing the evidence in the light most favorable to Plaintiff, Plaintiff's claim fails at the first prong. In the prison context, "a serious medical need exists if (1) a condition has been diagnosed by a physician as mandating treatment or is so obvious that a layperson would recognize the need for medical care; or if (2) a delay in treatment causes a lifelong handicap or permanent loss." *Simmons v. Surry Cty. Sherriff's Dep't*, No. 1:09CV94, 2010 WL 1418319, at *3 (M.D.N.C. Apr. 2, 2010) (unpublished) (citing *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978)). Plaintiff has only alleged that he was denied medical treatment for "scrapes and

13

bruises on [his] arm." (Compl. at 7.) Plaintiff's alleged injuries were not diagnosed by a medical professional as requiring treatment, nor does Plaintiff elaborate on the severity of these wounds such that the Court could conclude that a layperson would have recognized the need for treatment. Plaintiff does not suggest that a lack of medical attention to his alleged injuries caused him any lasting medical problems. (*See generally* Compl.)[9]

On the contrary, Plaintiff's injuries were apparently minor enough that he did not mention them in the grievance he filed two days after the alleged incident, in which he complained of delays in medical treatment for other, unrelated chronic ailments. (*See* Ex. B to Grande Decl., Docket Entry 68-3.) Nor did he mention scrapes and bruises on his arm when he met with a medical professional to address his back pain on December 2, 2018, less than two weeks after the incident. (*See* Docket Entry 68-9.) As such, Defendant Varnado is entitled to summary judgment because there is simply no evidence that Plaintiff had "a serious medical need" that could form the basis of a successful claim for deliberate indifference against her. *See, e.g., Cole v. Andino*, No. 5:10-CT-3127-FL, 2012 WL 369092, at *3 (E.D.N.C. Feb. 3, 2012) (unpublished) (finding no Eighth Amendment violation by prison officials and granting their motion for summary judgment because, among other reasons, medical records showed that plaintiff's "injury was not serious in nature").

---

[9] Again, the undersigned has reviewed Plaintiff's purported amended complaint and the supplement thereto (Docket Entries 33, 42) and does not find any additional allegations or evidence that alters this analysis. The only other description of his injuries found in these documents is that his arm was "bruised and bloody." (Docket Entry 42 at 5.)

14

## 2. Defendant Hafeez

Plaintiff's claim against Defendant Hafeez alleges the use of force against Plaintiff, a convicted and sentenced state prisoner, in violation of the Eighth Amendment. (*See* Compl. at 4, 6, 9.) "The Eighth Amendment protects prisoners from unnecessary and wanton infliction of pain." *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotation omitted). Prison officials have an "affirmative obligation to take reasonable measures to guarantee [inmates'] safety." *Id.* (internal quotations omitted). Accordingly, when evaluating an excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To make this determination, the Court considers two elements: "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

> The objective component
>
> focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *cf. Wilkins*, 559 U.S. at 37 (explaining that the extent of injury suffered may indirectly "provide some indication of the amount of force applied"). Not every "malevolent touch by a prison guard" is necessarily a constitutional violation. *Hudson*, 503 U.S. at 9. The Eighth Amendment "excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 10 [internal quotation and citation omitted].

*Garris v. Gober*, No. 1:10-CV-504, 2013 WL 4502261, at *1 (M.D.N.C. Aug. 22, 2013), aff'd, 554 F. App'x 211 (4th Cir. 2014). In other words, "there is no 'significant injury' threshold to

sustain an excessive force claim because a de minimis injury, if the product of malicious and sadistic use of force, can sustain the claim." *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (quoting *Wilkins*, 559 U.S. at 37-38).

As for the subjective component, "[t]he state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). "The Supreme Court has set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with wantonness: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Id.* (citing *Whitley*, 475 U.S. at 321) (internal quotations omitted). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

Here, the record reflects that Plaintiff's alleged injuries were minimal and not the product of malicious force. Defendants dispute that *any* force was used against Plaintiff on November 21, 2018. (*See* Docket Entry 67 at 10.) Defendant Hafeez altogether denies slamming the trap door on Plaintiff's arm. (Hafeez Decl. ¶ 5.) According to Defendant Hafeez, because no force was used, no incident report was filed that day. (*Id.* ¶ 8.) On the contrary Plaintiff alleges that he suffered scrapes and bruises because of the alleged use of force. (Compl. at 7.) But as noted above, Plaintiff provides no further description of these

16

injuries, nor are they mentioned in any grievance or medical record generated in the weeks following the incident.

Beyond Plaintiff's own uncorroborated and brief allegations, there is no evidence that Defendant Hafeez acted with wantonness. First, Plaintiff's allegation that Defendant Hafeez intentionally slammed his arm into the trap door while Plaintiff was "discussing [his] food problem" is conclusory and unsupported. (*See* Compl. at 6.) Plaintiff does not explain how he knew that Defendant Hafeez's actions were "willful" or provide any other details that would allow such an inference to be drawn. (*Id.*) In denying that he used any force against Plaintiff, Defendant Hafeez's affidavit completely refutes the claim that he acted willfully to harm Plaintiff. (*See generally* Docket Entry 68-6.) Defendant Hafeez only acknowledges "securing" the trap door to Plaintiff's cell after Plaintiff withdrew his arm. (*Id.* ¶¶ 5-6.) In response, Plaintiff has not offered any sworn testimony of his own or other evidence that disputes the accuracy of Defendant Hafeez's affidavit. *See Anderson,* 477 U.S. at 248-49 ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.")

Second, even assuming Defendant Hafeez unknowingly or negligently caught Plaintiff's arm in the trap door causing the injuries that Plaintiff alleges, that alone would not give rise to a constitutional violation. "Proof of negligence is not enough to establish liability in a prison excessive force claim." *Garris v. Gober*, No. 1:10-CV-504, 2013 WL 4502261, at *4 (M.D.N.C. Aug. 22, 2013), *aff'd*, 554 F. App'x 211 (4th Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("Eighth Amendment liability requires more than ordinary lack of due care for the

prisoner's interests or safety.") (internal quotation omitted)). As noted above, there is simply no evidence from Plaintiff, apart from his own conclusory allegations, suggesting that Defendant Hafeez acted with a level of wantonness required to establish Eighth Amendment liability.[10]

Finally, the mere fact of Plaintiff's injury would not itself establish excessive force. Indeed, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins,* 559 U.S. at 37 ("The core judicial inquiry [is] not whether a certain quantum of injury was sustained . . . .") (internal quotation and citation omitted). Therefore, even if Plaintiff did suffer scrapes and bruises on his arms because of Defendant Hafeez's actions, without more evidence, the injury alone does not establish excessive force. Therefore, the undersigned finds that even viewing the evidence in the light most favorable to Plaintiff, there simply is not enough evidence of an Eighth Amendment violation by Defendant Hafeez "on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.

In sum, Plaintiff has failed to create a genuine issue of material fact both on the issue of exhaustion and on the merits of his Eight Amendment claims against Defendants Varnado and Hafeez, who are the only remaining defendants in this case. The undersigned will recommend that Defendants' motion for summary judgment be granted.

---

[10] The undersigned also notes that even where prison officials have admitted to closing trap doors on prisoner's arms, district courts in the Fourth Circuit have found this action justified in cases where prison officials have presented evidence that leaving trap doors open creates a security risk. *See Lloyd v. MacNeish,* No. 5:12-CT-3163-FL, 2015 WL 1391476, at *13 (E.D.N.C. Mar. 25, 2015) ("Plaintiff admits that he refused direct orders to remove his hands from the food tray slot . . . Plaintiff's disruptive behavior necessitated the need for force because it created a security risk in that plaintiff had the ability to reach out of his cell to grab passing detention officers or other inmates."); *Garris,* 2013 WL 4502261, at *4 ("[Plaintiff's] refusal to move his arm out of the door presented security and safety risks that justified [defendant's] use of some degree of force, so long as that force was not constitutionally excessive.").

18

## III.  CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 66) be **GRANTED.**

_____
Joe L. Webster
United States Magistrate Judge

March 16, 2021
Durham, North Carolina